**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**KRISTEN L. TRANETZKI**, OSB. No. 115730
kristen@angelilaw.com
Angeli Ungar Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR 97204
Telephone: (503) 954-2232
Facsimile: (503) 227-0880

**COURTNEY W. ANGELI**, OSB No. 941765
courtney@baaslaw.com
**ROBIN BOWERFIND**, OSB No. 035949
robin@baaslaw.com
Buchanan Angeli Altschul & Sullivan LLP
321 SW 4th Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 974-5015
Facsimile: (971) 230-0337

Attorneys for Plaintiff John Doe

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JOHN DOE**,

Plaintiff,

v.

**THE REED INSTITUTE (aka, Reed College)** and **JANE ROE**,

Defendants.

Case No.: 3:15-cv-00617-MO

PLAINTIFF'S OPPOSITION TO DEFENDANT JANE ROE'S FRCP 12(b)(6) MOTION TO DISMISS PLAINTIFF'S ABUSE OF PROCESS CLAIM

PAGE 1 – PLAINTIFF'S OPPOSITION TO DEFENDANT JANE ROE'S MOTION TO DISMISS PLAINTIFF'S ABUSE OF PROCESS CLAIM

Plaintiff John Doe respectfully submits this memorandum of law in opposition to defendant Jane Roe's FRCP 12(b)(6) Motion to Dismiss Plaintiff's Abuse of Process Claim ("Partial Motion to Dismiss" or "Motion") (ECF No. 13). Because Plaintiff's First Amended Complaint ("FAC") adequately alleges an abuse of process claim against Jane Roe, Roe's Partial Motion to Dismiss should be denied.

**INTRODUCTION**

Plaintiff's claim for abuse process is properly pled. This action involves false rape allegations against plaintiff John Doe ("John") by his ex-girlfriend and fellow Reed College student, defendant Jane Roe ("Jane"), and her successful attempt to misuse their school's disciplinary process to further her own goals. By his pleading, plaintiff has satisfied the requirements of Oregon law: (1) he has alleged an ulterior purpose unrelated to the process of Reed's enforcing its honor principle; (2) he has alleged a "definite act or threat" by Jane in perverting that process; (3) he has alleged a "legal process" that was abused, because Oregon law does not preclude an abuse of process claim in connection with a private college's disciplinary proceeding; and (4) (to the extent he even needs to) he has alleged a "seizure of property."

As set forth in the FAC, on July 25, 2013, after they had been dating for approximately ten months, John and Jane engaged in fully consensual group sexual activity with A.M., a recent Reed graduate. (FAC ¶ 2.) Months later, in late October 2013, John and Jane ended their relationship. (*Id.* ¶ 6.) John later began secretly dating one of Jane's friends, which Jane eventually discovered. (*Id.* ¶¶ 7, 82.) Jealous and angry at her ex-boyfriend's relationship with her friend, Jane decided to take matters into her own hands and suddenly declared for the first time, in March 2014, that the July 25th group sex eight months earlier was unwanted by her and amounted to an "assault", and initiated disciplinary proceedings against John. (*Id.* ¶¶ 7, 82, 84.)

Contrary to what Jane claims in her Motion, this is not a case where a defendant pursued a proper process to its natural conclusion, just with bad intentions. Although Jane filed a formal complaint against John with Reed with a bad motive (anger, jealousy), plaintiff has also alleged improper *ulterior purposes* for Jane's conduct: "to disrupt her ex-boyfriend's education, to destroy his reputation, and to undermine his new relationship." (*Id.* ¶ 292.) Presumably, the purpose of Reed's disciplinary process is to assess accurately whether misconduct occurred and properly to impose discipline that is commensurate with the offense. Jane's alleged motivations are clearly at odds with purposes for which Reed's disciplinary proceeding was designed. (*See, e.g.*, FAC ¶¶ 139, 140 (alleging that the disciplinary process is intended to investigate and recommend actions appropriate to the circumstances of the case and the ethos of the educational institution.)) As a result of Jane's deliberate conduct in making a false report and false accusations (*see, e.g.*, FAC ¶¶ 7-8, 88-89), John was deprived of his "property right in education, his right to be physically present on Reed's campus and to reside in Reed's residences, as well as his other privileges enjoyed under his contract with Reed." (FAC ¶ 293.) The First Amended Complaint thus alleges Jane's perversion of a legal process to accomplish ulterior purposes collateral to the process at issue, and which resulted in seizure of John's property.

## ARGUMENT

### A. The Standard Governing Motions to Dismiss Cautions the Court to Evaluate the Complaint Liberally.

A complaint should not be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). On motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts are required to accept the plaintiffs' allegations as

true and construe them in the light most favorable to plaintiffs, *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005), and accept as true all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be construed liberally and in the light most favorable to the plaintiff. *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *cert. granted* in part on other issues, 131 S. Ct. 415 (2010).

The purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits. *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1015 (S.D. Cal. 2005). As the Supreme Court has cautioned, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the fact finder." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

**B. John Doe Has Sufficiently Pled a Claim for Abuse of Process.**

"Abuse of process is 'the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause.'" *Larsen v. Credit Bureau, Inc.*, 279 Or. 405, 408 (1977) (citing *Kelly v. McBarron*, 258 Or. 149 (1971)). "A defendant is liable for abuse of process if it perverts a process which is regular on its face to a purpose for which the process is not intended." *Clausen v. Carstens*, 83 Or. App. 112, 118 (1986). That is exactly what the FAC alleges. Jane deliberately misused Reed's disciplinary process, which is designed to investigate and adjudicate alleged violations of school policy, to disrupt her ex-boyfriend's academic career, destroy his reputation, and undermine his personal relationship with his new girlfriend. All the elements of the tort have been sufficiently pled.

1. John Doe has sufficiently pled Jane's ulterior purpose.

Jane properly notes that "to plead a claim for abuse of process, a plaintiff must allege some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is

not proper in the regular conduct of the proceeding." *Pfaendler v. Bruce*, 195 Or. App. 561, 572 (2004) (citing *Larsen*, 279 Or. at 408). The FAC on its face satisfies this element: John specifically pled that, "In March 2014, eight months after the July 25 group sex, and only after John started dating Jane's friend, Jane claimed—for the first time—to Reed's Community Safety Division ("Community Safety") that (among other things) she had not consented to the group sex on July 25, 2013. Jane's accusations were . . . intended to retaliate against John for dating her friend . . ." (FAC ¶ 7-8.) It further alleges that "Jane perverted the SMB [Sexual Misconduct Board] process to a process for which the SMB was not intended to accomplish the ulterior purpose of retaliating against John for ending his relationship with Jane and for dating Jane's friend." (FAC ¶ 292.) Her goal was to "disrupt her ex-boyfriend's education, to destroy his reputation, and to undermine his new relationship." (FAC ¶ 292.) John accordingly has adequately pled Jane's ulterior purpose.

The *Clausen* case makes clear that plaintiff is reading the requirement of "ulterior purpose" too narrowly. In that case, the plaintiff alleged that an abuse of process occurred in a legal proceeding in which a receiver was procured in connection with a divorce proceeding. The plaintiff alleged that the defendant attorneys "procured the receiver for the ulterior purpose of coercing a settlement and unauthorized discovery in the dissolution case." 83 Or. App. at 118. The Court stated:

> That is a sufficient pleading. Although the receiver was appointed in the very case in which defendants actually sought collateral advantage, [plaintiff] still has stated a claim. The receivership proceeding was collateral to the main case. Its only proper purpose was to protect the property at issue pending the outcome of the case. * * * Its use to coerce a settlement or other concessions in the main case would be beyond the purpose for which it was created. Although the complaint does not explicitly allege that defendants procured the receiver primarily for the ulterior purpose, * * * that allegation is implicit in the pleadings.

*Id.* (internal citations omitted).

In this case, Jane's main criticism with the pleading is that supposedly "John identifies no ulterior purpose of Jane's, nor any action or threat taken by her, that was unrelated to the process" because "John's claim is premised on the notion that Jane sought to obtain the very end (John's discipline from Reed) that Reed's disciplinary process was designed to bring about." (Motion at 2.) *Clausen* makes clear that the fact that Jane may have had a legitimate purpose *and* an ulterior motive does not defeat the claim; those purposes do not have to be wholly unrelated to one another. In making her objection, Jane overlooks the factual assertions in the pleading that demonstrate that Jane "pervert[ed] a process which is regular on its face to a purpose for which the process is not intended," *Clausen*, 83 Or. App. at 118, namely that Jane intended to "disrupt her ex-boyfriend's education, to destroy his reputation, and to undermine his new relationship." (FAC ¶ 292.) These goals are *not* the "very end" that Reed's disciplinary process was designed to bring about. They are goals *other* than that for which Reed's disciplinary process was intended. (*See*, *e.g.*, FAC ¶¶ 139, 140 (disciplinary process intended to investigate and recommend actions appropriate to the circumstances of the case and the ethos of the educational institution).)

Jane also complains that there is no allegation that "Jane ever sought to obtain any sort of 'collateral advantage,' such as the surrender of property or the payment of money" (Motion at 5), but that misstates the crux of the tort, which is a perversion of the process. As stated earlier, the cases, relying on Dean William L. Prosser's treatise *Law of Torts*, suggest, as an example, that "the improper purpose *usually* take the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Larsen*, 279 Or. at 408 (quoting *Prosser*, *Law of Torts* (4th ed. 1971), 857, § 121) (emphasis added). But this is just an illustration set

forth in a treatise, not a hard and fast requirement.  Not every case is going to involve the surrender of property or the payment of money, nor is every case going to look like a typical extortion scheme.  Again, *Clausen* makes that clear.

Put simply, the test is to determine whether a legitimate process was used to accomplish an end which is not the regular purpose of that process.   Jane's end was, as alleged, to "disrupt her ex-boyfriend's education, to destroy his reputation, and to undermine his new relationship." (FAC ¶ 292.)  Even assuming that the disruption to John's education was the "regular" end of the disciplinary process, which we disagree was proper here, the other two ulterior purposes alleged certainly are not:  a school disciplinary process is not supposed to be abused by a student to cause a rift between her ex-boyfriend and his new girlfriend.

Guidance from other cases is also helpful here in understanding what type of ulterior purpose is sufficient to state a claim for the tort.  For instance, in *Carranza v. United States*, Case No. 3:12-cv-2255-AC, 2013 WL 3333104 (D. Or. July 1, 2013), plaintiff (Carranza) lodged an abuse of process claim against defendants (the United States and John Doe Federal Law Enforcement Agents), alleging that defendants willfully used the immigration detention process against her for the illegitimate purpose of attempting to coerce information from her about her brother who was wanted in connection with a criminal investigation.  Defendants moved to dismiss, arguing that, regardless of any alleged ulterior motive, there was probable cause to arrest and detain Carranza, and that she did not plead sufficient facts to show the immigration detention process was initiated for any purpose other than to secure her presence at immigration and removal proceedings.

In denying defendants' motion to dismiss, the *Carranza* court reasoned that "the legitimate purpose of the immigration detention process is securing the presence of parties for

immigration and removal proceedings." *Id.* at *11.  Accepting the allegations of the complaint as true and drawing all reasonable inferences in favor of Carranza, the court found that she sufficiently pled an illegitimate purpose of the proceedings, namely that "Defendants used the immigration detention process not to detain Carranza pursuant to an outstanding removal order, but to compel her to divulge the whereabouts of her brother." *Id.* at *12.  In other words, the court "reasonably inferred that Defendants detained Carranza for the purpose of coercing her cooperation and that of her family in their search for [Carranza's brother]." *Id.*  This is despite defendants' arguments that they only had in mind the legitimate purpose of the detention process.

Just as plaintiff did in *Carranza*, John has sufficiently pled an ulterior purpose by Jane: to disrupt her ex-boyfriend's education, to destroy his reputation, and to undermine his new relationship.  Whether she succeeded in those goals is beside the point, nor does it matter at this stage if she disagrees factually with the allegations about her goals—presumably she does.  Just as the court rejected the defendants' attempt in *Carranza* to offer legitimate reasons for the proceeding (securing presence for removal order), so too here should Jane's attempts to offer legitimate reasons for the proceeding (school discipline against John) be rejected for purposes of this motion. *See also Clausen*, 83 Or. App. at 118 (accepting as true for purposes of abuse of process claim plaintiff's allegation that the *ex parte* order appointed a receiver of plaintiff's business interests in bitter divorce proceedings was done for ulterior purpose of forcing settlement and gaining unauthorized discovery, even though defendants asserted the legitimate statutory purpose of receivership to protect property during pending proceedings).

Jane also suggests that her allegedly malicious intent in pursuing the disciplinary proceeding somehow undermines the validity of John's abuse of process claim; that is, that

because she had a bad motive, the tort cannot lie. Jane is wrong as a matter of law. A bad motive and an ulterior purpose are not mutually exclusive—indeed, they may often co-exist—and courts have thus allowed plaintiffs to simultaneously pursue tort claims of both malicious prosecution and abuse of process. *See, e.g.*, *Singh v. McLaughlin*, 255 Or. App. 340, 353-55 (2013) (allowing claims for malicious prosecution and for abuse of process).

2. <u>John Doe has sufficiently alleged a "definite act" by Jane in perverting the process</u>.

The abuse of process tort also requires "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Larsen*, 279 Or. at 408 (cited favorably in Motion at 6). John has patently satisfied this element as well. Jane's only objection here is that "John's claim is insufficient, for it fails to identify or allege any act taken by Jane—or threat made by Jane—that was either not authorized by the process or was aimed at an illegitimate objective." (Motion at 6.) Jane's argument ignores the allegations in the First Amended Complaint detailing the very concrete actions taken by Jane to pervert the process. (*See*, *e.g.*, FAC ¶¶ 7-8 (Jane's false accusations to Reed), ¶¶ 88-89, 291 (Jane's false report on the sexual assault), ¶293 (Jane "perverted" and "hijacked" the proceeding.)

Not only is it clear from the pleading that Jane willfully undertook these actions, it is also clear that these specific actions undertaken by Jane were aimed at an illegitimate objective, namely to "disrupt her ex-boyfriend's education, to destroy his reputation, and to undermine his new relationship." (FAC ¶ 292.) As alleged, Jane's false report, false accusations and false testimony, were all made in furtherance of her ulterior purpose.

3. <u>John Doe has sufficiently alleged the "legal process."</u>

Jane also mistakenly asserts that a private college's internal disciplinary process is "not the sort of 'legal process' for which an abuse of process claim may lie." (Motion at 7.) Contrary

to Jane's assertion, the Oregon Supreme Court in *Donovan v. Barnes*, 274 Or. 701 (1976), previously established that the related tort of malicious prosecution can be based on a university's internal disciplinary proceeding.[1] There, the court was presented with the issue of whether an action for malicious prosecution should be allowed in connection with student disciplinary proceedings. *Id.* at 703-04. The court rejected the protests of the defendant who had instigated the disciplinary proceedings: "We do not agree with defendant's contention that malicious prosecution actions should never be allowed to be based upon the malicious prosecution of a student disciplinary proceeding." *Id.* at 704. The *Donovan* court could find "no basis for applying any different standards to this action merely because it is based on an adjudicatory proceeding before an administrative body[2] rather than a proceeding before a judicial tribunal." *Id.* The *Donovan* court instead opined that "[t]he administrative process is also a *legal process*, and its abuse in the same way with the same injury should receive the same penalty." *Id.* at 705 (emphasis added). Thus, the *Donovan* court definitively and affirmatively answered the question at hand, *i.e.*, can a student disciplinary process be the sort of "legal process" for which an abuse of process claim may lie? (Motion at 7.)

---

[1] As noted above, claims for malicious prosecution and abuse of process can and often are brought in the same legal proceeding based on the same underlying facts. *See, e.g.*, *Singh*, 255 Or. App. at 353-55 (recognizing that abuse of process and malicious prosecution claims can arise from the same legal process). These tort claims both require, as a necessary element, a "legal process" or a "judicial proceeding." *See*, *e.g.*, *Alvarez v. Retail Credit Ass'n*, 234 Or. 255, 259-260 (1963) ("Under Oregon law, the elements of a claim for wrongful initiation of a civil proceeding are: (1) The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff…."). The malicious prosecution claim is arguably narrower than an abuse of process claim in requiring a "judicial proceeding" as opposed to the broader "legal process." By allowing a malicious prosecution claim in the context of a malicious prosecution claim in *Donovan*, the Oregon Supreme Court adopted a broad interpretation of the law that must apply with at least equal force to abuse of process claims.

[2] The administrative proceeding in *Donovan* was the University of Oregon Student Court.

In reaching its holding, the *Donovan* court did not distinguish between private or public universities. Rather, the court concluded that "an action for malicious prosecution may be based upon the initiation or instigation of *an administrative proceeding of a judicial nature* and that the rules and standards that govern actions based upon civil proceedings should also apply to actions based upon administrative proceedings." *Id.* at 705-06 (emphasis added). Relevant to its determination were the specific quasi-judicial "procedural aspects" of the student disciplinary proceedings. *Id.* at 707-09 (*e.g.*, written notice of the charges, a hearing before the Student Court, right to present evidence and make opening and closing statements).

Other courts, likewise, have recognized that administrative proceedings, such as the student disciplinary actions here and in *Donovan*, are "legal processes" that can appropriately be the basis for an abuse of process or malicious prosecution claim. The need for redress against malicious or abusive proceedings conducted outside of a traditional courtroom setting was recognized because "[t]he same harmful consequences may flow from the groundless and malicious institution of proceedings in them as does from judicial proceedings similarly begun." *Melvin v. Pence*, 130 F.2d 423, 425-27 (D.C. Cir. 1942) (allowing tort of malicious prosecution for administrative proceedings) (cited favorably in *Donavan*). The Rhode Island Supreme Court, for instance, held that "contested administrative determinations or proceedings that establish the legal rights, duties, or privileges of a party after a hearing and that embody sufficient attributes of judicial proceedings" can give rise to an abuse of process claim. *Hillside Associates v. Stravato*, 642 A.2d 664, 669 (R.I. 1994).[3] Contrary to Jane's assertions (Motion at 8), John's complaint

[3] The list of courts that have similarly recognized that the torts of malicious prosecution and abuse of process can arise outside the context of a court proceeding is extensive. *See, e.g.*, *National Surety Co. v. Page*, 58 F.2d 145, 148 (4th Cir. 1932) (allowing tort of malicious prosecution for administrative proceedings); *Lindenman v. Umscheid*, 255 Kan. 610, 633, 875 P.2d 964, 979 (1994) (allowing abuse of process and malicious prosecution claims in connection

does not stretch the definitional boundaries of "legal process" in any sort of way that should cause it to lack tort protection.

Applying *Donavan*, it is clear that the FAC satisfactorily pleads "an administrative proceeding of a judicial nature," *Donovan*, 274 Or. at 705-06, at Reed to survive the motion to dismiss. It alleges, for instance, that: "The Guidebook provides that formal complaints of sexual misconduct made by students against current or former students are heard and decided by the SMB." (FAC ¶ 139.) Moreover, "[a]ccording to the Guidebook, the SMB has 'the responsibility to investigate complaints, determine facts, and recommend action appropriate to the circumstances of the case and the ethos of an educational institution.'" (FAC ¶ 140.) It further alleges the specific procedural aspects of the Reed disciplinary process, factors which were relevant to the *Donovan* court's holding. (*See, e.g.*, FAC ¶¶ 126-127 (alleging complaint); 143

---

with administrative licensing proceedings); *American Credit Card Tel. Co. v. National Pay Tel. Corp*., 504 So. 2d 486, 489 (Fla. Dist. Ct. App. 1987) ("agency proceeding may at some point become sufficiently quasi-judicial to support a claim for malicious prosecution"); *Groat v. Town Bd. of Glenville*, 73 A.D.2d 426, 428-30, 426 N.Y.S.2d 339, 340-41 (1980) ("administrative proceedings which require a hearing and trial of the issues on evidence and testimony under oath, with the right of cross-examination, have sufficient attributes of judicial proceedings to be considered judicial proceedings for the purposes of a cause of action for malicious prosecution"); *McGuire v. Armitage*, 184 Mont. 407, 410-11, 603 P.2d 253, 255 (1979) (malicious prosecution tort can be based on proceeding before administrative agency); *Cassidy v. Cain*, 145 Ind. App. 581, 588-89, 251 N.E.2d 852, 856-57 (1969) (allowing abuse of process and malicious prosecution claims for administrative proceeding); *Kauffman v. A.H. Robins Co.*, 223 Tenn. 515, 520-27, 448 S.W.2d 400, 402-05 (1969) (same); Carver v. Lykes, 262 N.C. 345, 352-54, 137 S.E.2d 139, 145-46 (1964) ("an action for malicious prosecution may be predicated upon the prosecution, institution, or instigation of an administrative proceeding where such proceeding is adjudicatory in nature and may adversely affect a legally protected interest"); *Hardy v. Vial*, 48 Cal. 2d 577, 580-81, 311 P.2d 494, 495-96 (1957) (an action for malicious prosecution may be based on a proceeding before an administrative agency); *Rainier's Dairies v. Raritan Valley Farms, Inc*., 19 N.J. 552, 564-66, 117 A.2d 889, 895-96 (1955) ("under certain circumstances a malicious prosecution may be predicated upon the institution of other than a judicial action, at least where such proceedings are adjudicatory in nature and may adversely affect legally protected interests"); and *Dixie Broad. Corp. v. Rivers*, 209 Ga. 98, 105-06, 70 S.E.2d 734, 740-41 (1952) ("a cause of action for malicious prosecution or the malicious use of legal proceedings may be predicated upon the prosecution of an administrative proceeding").

(alleging adversarial hearing with evidence, including direct examination and witness testimony, and determinations of fact and recommendation); 175-176 (alleging appeal process)). *See* 274 Or. at 707-09.

4. John Doe has sufficiently pled seizure of his property.

Jane also asserts that the FAC fails properly to allege "an actual arrest or a seizure of property" sufficient to establish the abuse of process claim. (Motion at 8.) Here, too, Jane is mistaken.[4] John has sufficiently pled "a seizure of property" sufficient to survive a motion to dismiss, namely that he was deprived of his "property right in education, his right to be physically present on Reed's campus and to reside in Reed's residences, as well as his other privileges enjoyed under his contract with Reed." (FAC ¶ 293.)

Courts are not as rigid in their interpretation of "seizure" as Jane insists. There does not need to be some tangible transfer of physical property to another person or body. For instance, in *Roberts v. Jefferson County*, the court, applying *Reynolds*, recognized that a "'seizure' could be defined as not being allowed to build on your property due to the placement of a stop work

[4] There is a split in the courts as to whether "an actual arrest or seizure of property" is even a required element of the tort claim. Jane relies on *Reynolds v.* Givens, 72 Or. App. 248, 255 (1984), for this proposition, although other cases have called this requirement into question. *Clausen*, for instance, was decided by the same court a year later and cited favorably to *Reynolds*, but did not identify the "actual arrest or seizure of property" as a required element of the tort. 83 Or. App. at 118. This Court, in *Spartalian v. Citibank*, Case No. 3:12-cv-888-MO, 2012 WL 3314164 (D. Or. Aug. 10, 2012), likewise made no reference of the requirement in its instructions to the plaintiff on how to replead the claim. *Id.* at *3. There, the Court dismissed the abuse of process claim, but without prejudice, because plaintiff "fails to allege what Citibank's ulterior purpose was when it conspired with the other defendants to do so." *Id.* The Court's specific instructions were: "If plaintiff wishes to do so, I instruct that he include in his amended complaint facts suggesting that Citibank filed suit in Nevada in order to extort something from him unrelated to the debt collection proceedings." *Id.* The Court did not instruct him to allege a seizure of property or actual arrest in an amended complaint, nor were there any facts suggesting he could have pleaded an actual arrest or a seizure of property. *But see Lee v. Mitchell*, 152 Or. App. 159, 179 (1998) (recognizing a "split of authority" on whether it is necessary to allege either an actual arrest or seizure of property in order to state a claim, but declining to "change our opinion at this time" (citing *Reynolds*)).

order." *Roberts*, Case No. 98-cv-524, 1999 WL 1442334 (D. Or. Oct. 5, 1999), at *6; *see also Clausen*, 83 Or. App. at 118 (although not explicitly discussing what property was "seized," it can be inferred that the court appointed receiver interfered with plaintiff's rights in managing his businesses). That is, a mere *interference* with property rights would be sufficient to allege the tort. Thus, interference with the property right in education or other contractual rights can and does constitute a "seizure" for purposes of Jane's Motion.

Although Jane argues that the property seized, as alleged by John, "appears to be radically beyond that which previously has been recognized by *any* court in this context" (Motion at 8), courts have consistently acknowledged there is a property right in one's education. In the seminal case of *Goss v. Lopez*, the United States Supreme Court determined that a high school student, who had been suspended for ten days based on charges of misconduct, had a legitimate entitlement to public secondary education as a property interest 419 U.S. 565, 572–73 (1975); *see also Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 84 (1978) (assuming student had protected interest in medical education); *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 223 (1985) (assuming property right in continued enrollment in six-year undergraduate and medical degree program); *Dixon v. Alabama State Board of Education*, 294 F.2d 150, 157 (5th Cir.) (recognizing property right in continuing education at an institute of higher learning), *cert. denied*, 368 U.S. 930 (1961); *Gorman v. University of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988) (recognizing liberty and property interest in "student's interest in pursuing an education"); *Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975) (relying on *Goss* and finding property right in college education where one paid for enrollment and attendance); *Lewin v. Medical College of Hampton Rds*., 910 F. Supp. 1161, 1164 (E.D. Va. 1996) (finding "protectable property interest in continued enrollment"), *aff'd*,

131 F.3d 135 (4th Cir. 1997); *Stoller v. College of Med.*, 562 F. Supp. 403, 412 (M.D. Pa. 1983) ("a graduate student has a 'property' interest in continuing his studies"), *aff'd without opinion*, 727 F.2d 1101 (3d Cir. 1984).

A property right in higher education may also be created by contract. *See*, *e.g.*, *Ewing*, 474 U.S. at 222 n.7 ("'agreements implied from the promisor's words and conduct in the light of the surrounding circumstances' could be independent sources of property interests."); *Galdikas v. Fagan*, 342 F.3d 684, 692 (7th Cir. 2003) (recognizing property right in post-secondary education when "payment of tuition to an educational institution ordinarily gives rise to an implied contract that the school will award a degree upon the student's satisfaction of the degree requirements established by the school.") John's FAC alleges at numerous times that he had a contract with Reed. (*See*, *e.g.*, FAC ¶¶ 43, 251.) The "property seized" as alleged in the FAC is thus sufficient to survive a motion to dismiss and certainly does not represent a novel or "radical" (Motion at 8) concept of law.

Jane also wrongly asserts that the "the use of the process must result in the seizure of property that is then used as leverage to obtain 'a collateral advantage' unrelated to the seizure of the property." (Motion at 8.) This requirement has never been articulated by the courts, nor do court decisions support it. Rather, *Clausen*, cited by Jane, holds that "the tort involves *the use of the process* as a club to extort something unrelated to the process from the other party." *Clausen*, 83 Or. App. at 118 (emphasis added). *Larsen*, also cited by Jane, notes only that "the improper purpose *usually* takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." *Larsen*, 279 Or. at 408 (emphasis added). Jane provides no citation to support her contention that, to state a claim for abuse of process, the

property seized must then be used as the leverage to obtain a different, collateral advantage. (Motion at 8.) This is a fundamental misunderstanding of the tort's requirements that has no basis in Oregon law.

Even if Jane's analysis were accurate, John's pleading is still sufficient. He alleges that Jane used the threat of seizing his property right in his education and other rights enjoyed by his contract with Reed to undermine his relationship and destroy his reputation. These were not undesirable fallout or unpleasant consequences from the disciplinary proceedings; rather, they were Jane's ulterior purposes for misusing a disciplinary proceeding that is supposed to confidentially investigate and adjudicate violations of school policy and confidentially make findings and recommendations for sanctions. (*See, e.g.,* FAC ¶¶ 139-140, 143.)

**CONCLUSION**

For the reasons stated above, Plaintiff John Doe respectfully requests that this Court deny Jane Roe's Partial Motion to Dismiss.

DATED this 1st day of June, 2015.

ANGELI UNGAR LAW GROUP LLC

By: s/ David H. Angeli
David H. Angeli, OSB #020244
Kristen L. Tranetzki, OSB #115730
Telephone: (503) 954-2232

BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP

Courtney W. Angeli, OSB #941765
Robin Bowerfind, OSB #035949
Telephone: (503) 974-5015

Attorneys for Plaintiff John Doe