**DAVID H. ANGELI**, OSB No. 020244
david@angelilaw.com
**KRISTEN L. TRANETZKI**, OSB. No. 115730
kristen@angelilaw.com
Angeli Ungar Law Group LLC
121 SW Morrison Street, Suite 400
Portland, OR  97204
Telephone:  (503) 954-2232
Facsimile:  (503) 227-0880

**COURTNEY W. ANGELI**, OSB No. 941765
courtney@baaslaw.com
**ROBIN BOWERFIND**, OSB No. 035949
robin@baaslaw.com
Buchanan Angeli Altschul & Sullivan LLP
321 SW 4th Avenue, Suite 600
Portland, OR  97204
Telephone:  (503) 974-5015
Facsimile:  (971) 230-0337

Attorneys for Plaintiff John Doe

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOHN DOE**, | Case No.: 3:15-cv-00617-MO |
| Plaintiff, | **OPPOSED MOTION TO ENTER PROTECTIVE ORDER** |
| v. | |
| **THE REED INSTITUTE (aka, Reed College)** and **JANE ROE**, | |
| Defendants. | |

PAGE 1 – OPPOSED MOTION TO ENTER PROTECTIVE ORDER

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1(a), counsel for plaintiff John Doe certifies that they made a good faith effort to confer with counsel for defendants the Reed Institute ("Reed") and Jane Roe and that Reed opposes this motion. Counsel was unable to determine Roe's position on this motion prior to filing.

## MOTION

Pursuant to Rule 26(c), plaintiff Doe moves this Court for entry of the attached Protective Order Governing Nonparty Discovery. This motion is supported by the following memorandum of law.

## MEMORANDUM

### I.     INTRODUCTION

Plaintiff has been litigating this suit under a pseudonym in order to protect his privacy interests as he seeks redress against Jane Roe ("Roe")[1] and the Reed Institute ("Reed"). The Court previously granted Plaintiff's Unopposed Motion to Proceed under a Pseudonym (ECF No. 9) and entered the parties' Stipulated Protective Order (ECF No. 49), to safeguard Doe and Roe's identities in public filings. The parties recognize that they now may have to use Doe's and/or Roe's real names with nonparty witnesses as part of their on-going investigation and discovery. It appears that Reed wishes to reveal Doe's true identity in connection with this lawsuit, in order to ferret out and speak with potential witnesses about him and Roe. Plaintiff thus seeks a limited protective order that will guard against unnecessary or widespread disclosure of his and Roe's true identities during the parties' investigation and discovery.

---

[1] Doe also sought to protect the privacy interests of his accuser and has referred to her as Jane Roe in all public filings.

PAGE 2 – OPPOSED MOTION TO ENTER PROTECTIVE ORDER

The Court should grant Plaintiff's request for three reasons. First, substantial reasons exist to ensure the continued protection of Doe's true identity. Doe is not only accused of sexually assaulting his ex-girlfriend, he also is a victim of sexual assault himself, as determined by Reed's own internal investigation. There has been significant media attention to this litigation and revealing his true identity now – without proper precautions in place – would undermine the very goals of the lawsuit and cause him irreparable harm. Second, Reed will not be disadvantaged by entry of the Protective Order. Reed already knows Doe's and Roe's true identities and has been conducting its investigation using that knowledge. In fact, Reed's counsel was able to identify in its Initial Disclosures 42 individuals as likely having discoverable information about the case. Third, the proposed Protective Order is narrowly tailored to achieve the dual goals of protecting Doe's and Roe's identities while still allowing the parties to engage in robust investigation and discovery.

## II.    ARGUMENT

### A. Substantial Reasons Still Exist to Protect Doe's Identity.

As previously set forth in Plaintiff's Motion to Proceed Under a Pseudonym (ECF No. 2), Doe's privacy interests are significant. Doe was expelled from Reed, following false and malicious allegations made by his ex-girlfriend Roe that he sexually assaulted her, and after a fundamentally flawed and discriminatory disciplinary proceeding conducted by Reed. In this action, he seeks to clear his record of the erroneous findings issued by Reed. Doe sought, and was granted, permission to litigate under a pseudonym. (ECF No. 9.) Substantial reasons exist to ensure the continued protection of Doe's real identity.

The allegations involving Doe and related factual context are of an extremely private and intimate nature. Central to the Complaint is the sexual relationship between Doe and Roe, who,

at all times relevant, were young college students. The highly intimate (as well as salacious and unconventional) details of their sexual relationship are directly at issue in Doe's suit. Because the allegations are "of the utmost intimacy," Doe is entitled to the protection of a pseudonym. *Doe v. Univ. of the South*, No. 4:09-cv-62, Memorandum and Order (E.D. Tenn. Aug. 7, 2009) (Lee, U.S.M.J.); *see also Doe v. University of Montana*, No. 9:12-cv-00077-DLC, 2012 WL 2416481 (D. Mt. June 26, 2012) at *4 (permitting redaction of student names in Title IX case against university brought by alleged perpetrator of sexual assault because "the interests of those individuals in avoiding undue embarrassment, harassment, and disclosure of sensitive private information outweigh the public's need to know their names."). Courts have consistently recognized that "[o]ne's sexual history and practices are among the most intimate aspects of a person's life."  *Doe v. Diocese Corp.*, 647 A.2d 1067, 1071-72 (Conn. Super. Ct. 1994).

In addition, Doe himself was a victim of sexual assault while at Reed – as confirmed by Reed's own internal investigation. His own experience of being a sexual assault victim at Reed is directly relevant to this lawsuit and serves as the basis for Doe's deliberate indifference claim against Reed. As a victim of sexual assault, Doe has a special need for continued anonymity. *Doe 140 v. The Archdiocese of Portland in Oregon*, CV. 07-1733-PK (Opinion and Order, February 26, 2008) at *6 (allowing plaintiff to proceed under pseudonym because "public knowledge of [sexual] abuse can trigger new trauma"); *Globe Newspaper Co. Inc. v. Clerk of Suffolk County Superior Court*, No. 01-5588*F, 2002 WL 202464, at *6 (Mass. Super. Feb. 4, 2002) ("for many victims of sexual abuse . . . public revelation of the abuse, if not sought by them, victimizes them yet again."). The names of rape victims are regularly shielded from the public. *See*, *e.g.*, *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir.1997) ("fictitious names are allowed necessary to protect the privacy of ... rape victims, and

PAGE 4 – OPPOSED MOTION TO ENTER PROTECTIVE ORDER

other particularly vulnerable parties or witnesses"); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa 2001) (granting anonymity to sexual assault victim).  We would expect Reed to endeavor to protect Doe's identity – as a victim of sexual assault – with the same diligence shown for other victims of sexual assault at Reed.

The Court agreed when this case was filed that good cause existed to maintain the confidentiality of Doe's identity, and nothing since the case was filed alters that conclusion.  Revealing Doe's identity now, at this stage of the litigation, would forever link his name with the accusation of sexual assault and publicly identify him as the student expelled from Reed.  In assessing whether the use of a pseudonym is appropriate, courts must consider whether the "injury litigated against would occur as a result of the disclosure of the plaintiff's identity." *Doe v. Rostker*, 89 F.R.D. 158, 162 (N.D. Cal. 1981).  Here, identification of Doe would defeat the very purpose of this lawsuit.  Revealing Doe's actual name without proper safeguards would likely result in the public association of his name with Roe's false and egregious allegations of sexual assault, thereby "vitiating" a primary purpose of the lawsuit.  *See*, *e.g*., *Rostker*, 89 F.R.D. at 161-62; *Roe v. Ingraham*, 364 F.Supp. 536, 541 n.7 (S.D.N.Y. 1973).

If anything, the proposed Protective Order is all the more necessary than when Doe filed his lawsuit, because there has been significant media attention to this litigation.  This case has regularly been covered by the Oregonian and other local news outlets.  *See*, *e.g*., *Federal Lawsuit Accused Reed College of Gender Discrimination: Case alleges Reed expelled male student accused of sexual assault to protect school's image*, WILLAMETTE WEEK, Apr. 15, 2015[2]; Bryan Denson, *Reed College students' group sex, drugs, sex tape at heart of Title IX lawsuit*, THE

---

[2] Available at http://www.wweek.com/portland/blog-33078-federal_lawsuit_accuses_reed_college_of_gender_dis.html (last viewed Dec. 23, 2015).

PAGE 5 – OPPOSED MOTION TO ENTER PROTECTIVE ORDER

OREGONIAN, Apr. 16, 2015[3]; Bryan Denson, *Reed College says ex-student suing school supplied drugs for group sex, kept elicit tape on phone*, THE OREGONIAN, May 13, 2015[4]; Bryan Denson, *Reed grad 'Jane Roe' fires back at ex-boyfriend's Title IX claims in drugs and group sex lawsuit*, THE OREGONIAN, May 18, 2015[5]; Bryan Denson, *Judge orders Reed College to cough up student and alumni disciplinary files in sex and drug lawsuit*, THE OREGONIAN, Sept. 9, 2015.[6] These articles have generated significant public attention: there were more than 330 comments from readers on OregonLive's website. Local television stations, including KATU and KOIN, have similarly reported on the litigation. In addition, the recent decisions regarding Reed's production of years of disciplinary files at Plaintiff's request have further increased the attention to this case, especially of current and former Reed students and other members of the Reed community, some who are very upset about having their records released.

This litigation has also garnered national media attention. *See*, *e.g.*, Karina Brown, *Student Fights Expulsion for a Threesome*, COURTHOUSE NEWS SERVICE, Apr. 16, 2015[7]; Jake New, *Suits from the Accused*, INSIDE HIGHER ED, May 1, 2015.[8] It has been discussed on such

---

[3] Available at http://www.oregonlive.com/portland/index.ssf/2015/04/reed_college_students_group_se.html (last viewed Dec. 23, 2015).
[4] Available at http://www.oregonlive.com/portland/index.ssf/2015/05/reed_college_says_accuser_john.html (last viewed Dec. 23, 2015).
[5] Available at http://www.oregonlive.com/portland/index.ssf/2015/05/reed_grad_jane_roe_fires_back.html (last viewed Dec. 23, 2015).
[6] Available at http://www.oregonlive.com/portland/index.ssf/2015/09/judge_orders_reed_college_to_c.html (last viewed Dec. 23, 2015).
[7] Available at http://www.courthousenews.com/2015/04/16/student-fights-expulsion-for-a-threesome.htm (last viewed Dec. 23, 2015).
[8] Available at https://www.insidehighered.com/news/2015/05/01/students-accused-sexual-assault-struggle-win-gender-bias-lawsuits (last viewed Dec. 23, 2015).

online forums as College Confidential.[9]  It has even become the subject of a Taiwanese animation available at https://www.youtube.com/watch?v=T0iCrDaDnqQ.

The heightened attention to this litigation demands that procedural safeguards be put in place to better control the use of Doe's and Roe's real names in connection with this lawsuit. Doe continues to have significant privacy interests that require that the parties' investigation and discovery be conducted under the protections of the proposed Protective Order.

### B.  Reed Will Not Be Disadvantaged by the Proposed Protective Order.

The proposed Protective Order Regarding Nonparty Discovery would ensure continued compliance with the use of pseudonyms during litigation, while still allowing the parties to engage in vigorous and robust case investigation and discovery.  Reed will not be disadvantaged in any way by the proposed Protective Order.  Reed already knows Doe's and Roe's true identities, and counsel for Reed has been engaging in a factual investigation and discovery fully informed with that knowledge.  *Doe 140 v. The Archdiocese of Portland in Orego*n, CV. 07-1733-PK (Opinion and Order, February 26, 2008) at *6 ("The prejudice that defendants would face if John were permitted to proceed anonymously is significantly lesser, and largely amendable to mitigation.  Defendants are already cognizant of John's true identity, and discovery has been proceeding."); *New York Blood Center*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (finding defendants would incur no prejudice in conducting discovery or trying the case if plaintiff proceeding using a pseudonym because defendant already knew plaintiff's name).

The parties' investigation and discovery has not been hindered or obstructed by the current use of the pseudonyms.  Reed's Initial Disclosures identified 42 individuals likely to

---

[9] Available at http://talk.collegeconfidential.com/search?discussionid=1769908&search=reed (last viewed Dec. 23, 2015).

PAGE 7 – OPPOSED MOTION TO ENTER PROTECTIVE ORDER

have discoverable information about this case; Roe's identified 11 such individuals. Reed and Roe both are aware of the factual underpinnings of the case. Counsel for Reed has already deposed Doe and has identified a handful of other potential witnesses for whom depositions are sought. The problem is not that Reed cannot conduct its factual investigation or discovery due to some lack of knowledge of Plaintiff's identity, but rather, how counsel should approach individuals who have factual knowledge about the case to discuss the case. There is no need to lift the Court Order permitting use of the pseudonyms or otherwise ignore its prescriptions. As discussed further below, the proposed Protective Order is the proper mechanism to safeguard Doe's and Roe's identities during discovery.

### C. The Proposed Protective Order is Narrowly Tailored.

The proposed Protective Order Regarding Nonparty Discovery is narrowly tailored to achieve its goals. It permits counsel and the named parties to disclose the identities of Doe and Roe to persons who may have factual information about Doe or Roe, in order to conduct their investigation or discovery. The parties will be able to approach individual witnesses who have knowledge relevant to this case. Counsel and the named parties are directed to show the Protective Order to these potential witnesses before confirming the identities of Doe and Roe in the lawsuit. These potentials witnesses are directed to not disclose to other persons the identities of Doe and Roe, unless counsel confirms that such disclosure is necessary to further the litigation. These potential witnesses are further directed not to disclose to the media the true identities of Doe and Roe in connection with this lawsuit unless permission is given.

Notably, the Protective Order does not prohibit any individual from speaking with the media or anyone else about their experiences with either Doe or Roe; rather, it just prevents them from revealing Doe's or Roe's real identities in connection with this lawsuit. The Protective

PAGE 8 – OPPOSED MOTION TO ENTER PROTECTIVE ORDER

Order is narrowly tailored and completely in line with the Court Order allowing Plaintiff to proceed using a pseudonym.  It is not unduly broad or burdensome.

Similar protective orders have been adopted in other pseudonymous litigation to handle discovery.  *See*, *e.g*, *Doe v. Univ. of the South*, No. 4:09-cv-62, Memorandum and Order (E.D. Tenn. Aug. 7, 2009) (Lee, U.S.M.J.) (entering Protective Order governing discovery that requires that "Defendants SHALL NOT identify any Plaintiff to any nonparty other than as may be necessary to defend against this action.  Any nonparty who is informed of any Plaintiff's identity SHALL be provided a copy of the protective order previously entered by the Court by the disclosing party."); *Does 1-5 v. McCrory*, No. 1:13CV711, 2014 WL29352 at *3 (M.D.N.C., Jan. 3, 2014) (Memorandum Opinion and Order) (ordering that "Individuals to whom disclosure of Plaintiffs' identities is made shall not further disclose that information to any other person without first obtaining confirmation from Defendants' counsel that such disclosure is necessary to litigate this action.").  *See also Does I through XXXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1070 (9th Cir. 2000) ("A district court with subject-matter jurisdiction over a case has the power to issue orders relating to third parties.").  Such a protective order is warranted here.

### III.    CONCLUSION

For the reasons set forth in this motion, the Court should enter the proposed Protective Order Governing Nonparty Discovery, attached to this motion.

DATED this 23rd day of December, 2015.

                ANGELI UNGAR LAW GROUP LLC

By:    s/ *David Angeli*
         David H. Angeli, OSB #020244
         Kristen L. Tranetzki, OSB #115730
         Telephone: (503) 954-2232

         BUCHANAN ANGELI ALTSCHUL & SULLIVAN LLP
         Courtney W. Angeli, OSB #941765
         Robin Bowerfind, OSB #035949
         Telephone: (503) 974-5015

         Attorneys for Plaintiff John Doe